McAlpine *et al. v.* Sweetser *et al.*

No. 8123.

McAlpine et al. *v.* Sweetser et al.

JUDGMENT.—*Fraud.—Collusion.—Debtor.—Creditor.—*The fraud which will authorize a creditor to impeach a judgment, obtained by another, against his debtor, must be a fraud against the creditor, not a mere overreaching of the debtor in his litigation. There must be collusion.

SAME.—*Process.—Judgment before Return Day After Jurisdiction Acquired.—* After jurisdiction of the person has been acquired by service of process, a judgment is not void because rendered before the return day, where the entry of the justice on his docket falsely recited an appearance by defendant, and a waiver of the usual notice, and defendant's admission that ''plaintiffs' claim was correct, just and due, and that judgment might be rendered thereon.'' But such judgment, as between the parties to it, is binding until set aside by the justice or reversed on appeal.

SAME.—*Acquiescence of Judgment Debtor.—*In such case, the defendant, having acquiesced in the judgment against him, must be deemed to have intended to give priority to, and to have preferred, such creditors, and to affirm the judgment.

SAME.—*Junior Liens.—*In such case, creditors taking judgments on the return day can not collaterally impeach the judgment of such preferred creditors, holding claims equally just and meritorious.

From the Vanderburgh Superior Court.

—— *Tanner* and —— *Ireland*, for appellants.

*J. E. Williamson, R. D. Richardson, C. Denby* and *D. B. Kumler*, for appellees.

MORRIS, C.—This action was commenced by the appellees for the purpose of compelling George Baumgartner, one of the appellants, to pay over to them the sum of $94, which he held as constable of Pigeon township, and which, as the appellees contend, rightfully belonged to them. The other applicants were made defendants on the ground that they claimed that the money belonged to them.

Two of the defendants below, Gruehn and Baumgartner, made default. The other appellants appeared to the action and moved to strike out portions of the complaint. The motion was overruled. They then demurred to the complaint, which was also overruled, and they answered by a general denial. The cause was submitted to a jury, who returned a verdict for the appellees. The appellants moved for a new trial. The motion was overruled, and Baumgartner ordered to pay the money to the appellees. Exceptions were properly reserved to the rulings of the court, and the evidence is made part of the record by bill of exceptions.

The rulings of the court upon the several motions made by the appellants and upon the demurrer to the complaint are assigned as errors. The complaint states that on the 9th day of December, 1878, the appellants recovered a judgment before one Thaddeus McTernan, a justice of the peace of Pigeon township, Vanderburgh county, Indiana, against the appellant Abraham Gruehn, for the sum of $115.67, and that on the same day they caused an execution to be properly issued on said judgment and placed in the hands of Baumgartner as constable of said township. It is further stated that, on the 5th day of December, 1878, the appellants, George McAlpine, John E. Polk, Henry Hibben, Henry S. Bowman and Earl C. Stinson, to whom said Gruehn was indebted, as partners, commenced a suit against him, before C. L. Roberts, a justice of the peace of said township; that a summons was issued in said action, on the said 5th day

of December, returnable on the 9th of the same month, and served on Gruehn the day it was issued.

It is further stated, that McAlpine, Polk, Hibben, Bowman and Stinson, knowing of the pendency of the appellees' suit against Gruehn, and that they would obtain judgment against him, on the 9th of December, 1878, the day on which the writ issued in the suit commenced by them against said Gruehn was returnable, that said Gruehn was insolvent, and that, unless they obtained judgment and execution against him before the appellees obtained judgment and execution on their claim, the latter would have priority over them, "wrongfully, fraudulently and unlawfully procured said Roberts, justice as aforesaid, to render judgment in their favor for $182.35, on the 7th day of December, 1878, two days after the summons was served on said Gruehn; that said Roberts did wrongfully, unlawfully and fraudulently render said judgment, on the 7th day of December, 1878, two days before said summons was made returnable; that, in order to make it appear that said judgment was valid and legally rendered, the said Roberts falsely recited therein, and as a part of said judgment, the following words:

"December 7th, 1878.  Come now the plaintiffs, by their attorneys.  The defendant also comes, by George W. McBride, his attorney.  The defendant waives the usual three days' notice, and admitted plaintiffs' claim was correct, just and due, and that judgment might be rendered thereon."

The plaintiffs aver that it is not true that Gruehn waived the usual notice of three days, nor that the defendant, or his attorney, consented that judgment might be rendered on said claim, before the expiration of three days; that Gruehn did not appear to said action, in person or by attorney; that said judgment was fraudulently rendered for the fraudulent purpose of obtaining a prior lien on the property of said Gruehn, by execution.  It is then averred that appellants, on the 7th day of December, 1878, caused an execution to

be issued on said judgment, so by them fraudulently obtained, and to be delivered on the same day to the appellant Baumgartner, as such constable, whereby they obtained an apparent priority over the execution of the appellees, issued and delivered to said constable on the 9th of said December. It is also stated that all the property of Gruehn was then in the hands of Baumgartner as such constable, on prior executions; that it was all sold, and after paying costs and prior liens, there remained in the hands of Baumgartner, as such constable, the sum of $94, which, the appellees claim, should be applied on their execution, and not on the execution issued on the judgment of the appellants. Copies of the judgments, executions and the returns thereon are made part of the complaint.

The motion to strike out portions of the complaint embraced that part of it which charged the justice, who rendered the judgment in favor of the appellants, with falsely stating that Gruehn appeared by attorney and consented to the judgment; also, other portions charging the justice with fraud. We are not sure that there was error in overruling this motion; but, however this may be, no harm is shown to have resulted to the appellants by refusing to strike out the matter objected to.

Was the demurrer to the complaint rightly overruled? In determining this question it will be proper to inquire whether or not the judgment rendered in favor of the appellants by Justice Roberts was good and valid as between the parties to it; and, if so, do the facts stated in the complaint render it invalid as against the appellees.

The summons in the action was issued and served on the judgment debtor Gruehn on the 5th day of December, 1878, and was returnable on the 9th day of the same month. The judgment was taken on the 7th day of December, 1878, two days before the return day of the summons, and without any

VOL. 76.—6

appearance by the debtor Gruehn, and, as the complaint charges, without the appearance of any person for him. Did the service of said summons on Gruehn give the justice jurisdiction of his person so that the judgment rendered against him two days before the return day of the summons was not void?

"From the moment of the service of process, the court has such control of the litigants that all its subsequent proceedings, however erroneous, are not void. If there is any irregularity in the process, or in the manner of its service, the defendant must take advantage of such irregularity by some motion or proceeding in the court where the action is pending. The fact that the defendant is not given all the time allowed him by law to plead, or that he was served by some person incompetent to make a valid service, or any other fact connected with the service of process, on account of which a judgment by default would be reversed upon appeal, will not ordinarily make the judgment vulnerable to a collateral attack." Freeman Judgments, sec. 126.

In the case of *Isaacs* v. *Price*, 2 Dillon C. C. 347, the court say : "A distinction is to be made between a case where there is no service whatever, and one which is simply defective or irregular. In the first case the court acquires no jurisdiction and its judgment is void ; in the other case, if the court to which the process is returnable adjudges the service to be sufficient and renders judgment therein, such judgment is not void, but only subject to be set aside by the court which gave it, * * or reversed upon appeal."

In the cases of *Glover* v. *Holman*, 3 Heisk. 519, and *West* v. *Williamson*, 1 Swan, 277, it is held that a judgment rendered by a justice of the peace is not void because rendered before or after the return day named in the summons. *Bonsall* v. *Isett*, 14 Iowa, 309 ; *Sutton* v. *Habron*, 7 Kan. 529 ; *Shea* v. *Quintin*, 30 Iowa, 58 ; *Darrah* v. *Watson*, 36 Iowa, 116 ; *Christian* v. *O'Neal*, 46 Miss. 669 ; *Cole* v. *Butler*,

43 Maine, 401; *Hendrick* v. *Whittemore*, 105 Mass. 23; *Kipp* v. *Fullerton*, 4 Minn. 473; *Helphenstine* v. *The Vincennes National Bank*, 65 Ind. 582; *Larr* v. *The State, ex rel.*, 45 Ind. 364; *Pressler* v. *Turner*, 57 Ind. 56. We think, therefore, that, as between the parties to it, the judgment in question can not be regarded as void, but must be held to be binding until set aside by proceedings before the justice, or reversed on appeal.

The judgment being valid and binding between the parties, the question now arises : Was it competent for the appellees to impeach it collaterally? Gruehn had a right, as against his other creditors, to prefer the appellants. He might have gone before Justice Roberts and confessed a judgment in their favor for the very purpose of giving them a preference, and for the purpose of enabling them to obtain an execution on the 7th day of December, and thereby obtain the first lien on his property; and, had this been done, the appellees could not have complained. Gruehn having acquiesced in the judgment obtained by the appellants,—taken no steps to set it aside,—waived the irregularity. This it was competent for him to do. It was simply exercising his right to prefer one creditor to another. It is admitted that Gruehn was justly indebted to the appellants in the sum for which the judgment was rendered. Gruehn, by failing to take steps to avoid the judgment within a reasonable time, affirmed it. *Cagger* v. *Gardner*, 1 How. Pr. 142; *Butler* v. *King*, 10 Wend. 561; Freeman Judgments, sec. 102; *Kelley* v. *Mize*, 3 Sneed, 59.

"A debtor," says an eminent writer, "occupies a twofold relation to his property, that of owner and a *quasi* trustee thereof for his creditors. Because of the latter relation, he is not allowed to create a debt, or do anything *mala fide* to the wilful prejudice of his creditors; but in the former relation he can create debts and is accountable to no one in the absence of fraud." And, again, he says: "Hence, in

his *bona fide* litigation, no stranger or creditor can interfere to stay his cause for him, or question the effect of the judgment upon his property. The creditor's right to impeach any act of his debtor does not arise until the tacit condition annexed to the debt is violated, namely: that he will do nothing in fraud of his creditors.'' Wells Res Adjudicata, pp. 150, 151; *Candee* v. *Lord,* 2 N. Y. 269.

It is not pretended that Gruehn has done anything in fraud of the rights of the appellees. He has acquiesced in the judgment of the appellants, whose claim against him is confessedly just, and thus given validity to the judgment. This he had the unquestionable right to do. Why, then, should the appellees intervene? The appellants' claim may be quite as meritorious as theirs, and justice will suffer as little if they be first paid as it would should the appellees obtain priority.

The fraud which will authorize a creditor to impeach a judgment against his debtor must be a fraud against the creditor, not a mere overreaching of the debtor in his litigation. There must be collusion. Wells Res Adjudicata; *Dougherty's Estate,* 9 Watts & S. 189; *Lewis* v. *Rogers,* 16 Pa. St. 18.

We think the facts stated in the complaint are not sufficient to authorize the appellees to intervene between Gruehn and the appellants. Gruehn may have preferred, and indeed, for anything that appears in the complaint, did prefer, that the judgment should be held to be valid and effective from its rendition. To this the appellees can not object.

The demurrers to the complaint should have been sustained.

Per Curiam.—It is ordered, upon the foregoing opinion, that the judgment below be reversed, at the cost of appellees.